**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BELINDA THOMAS,

Plaintiff,

v. CASE NO: 8:26-cv-03202

HILLSBOROUGH TRANSIT
AUTHORITY f/k/a
HILLSBOROUGH AREA
REGIONAL TRANSIT,
a political subdivision of
the State of Florida,

Defendant.
____________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, BELINDA THOMAS, (hereinafter "Plaintiff" or "Ms. Thomas"), a Florida resident, by and through the undersigned counsel, hereby files this Complaint and Demand for Jury Trial against Defendant, HILLSBOROUGH TRANSIT AUTHORITY f/k/a HILLSBOROUGH AREA REGIONAL TRANSIT (hereinafter "Defendant" or "HART"), and alleges the following:

**JURISDICTION AND VENUE**

1. This is an action for damages under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") for discrimination based on disability or perceived disability.

2. In this civil action Plaintiff has also brought claims against her former employer for monetary damages, declaratory relief, and for other equitable relief pursuant to the Florida Civil Rights Act ("FCRA") § 760.01, *et seq*.

3. This Court has jurisdiction over Plaintiff's ADA claims under 28 U.S.C. §§ 1331 and 1343.

4. This Court has jurisdiction over Plaintiff's FCRA claims under 28 U.S.C. § 1367.

5. Venue is appropriate in the Middle District of Florida because the events giving rise to the cause of action occurred in Hillsborough County, Florida.

**PARTIES**

6. Plaintiff, BELINDA THOMAS, is a resident of Hillsborough County, Florida.

7. Defendant, HILLSBOROUGH TRANSIT AUTHORITY a/k/a HILLSBOROUGH AREA REGIONAL TRANSIT, has been organized and in existence within Hillsborough County, Florida, located within the Middle District of Florida.

8. Ms. Thomas has satisfied all prerequisites necessary to bring her claims.

**GENERAL ALLEGATIONS**

9. Belinda Thomas is a disabled female who suffers from End-Stage Renal Disease (ESRD) requiring kidney dialysis and causing anuria, a permanent condition in which her kidneys do not produce urine.

10. On October 25, 2021, Ms. Thomas began working for HART as a Bus Operator.

11. On March 24, 2025, Ms. Thomas completed a Medical Leave of Absence form, requesting FMLA leave from March 30, 2025, through May 1, 2025, to undergo tricuspid valve replacement surgery to remove and replace a damaged heart valve and restore proper blood flow.

12. On April 4, 2025, Melissa Shelton, Senior HR Generalist at HART, reminded Ms. Thomas that she needed to complete a physical and a drug test before she could return to work.

13. In a signed letter dated April 30, 2025, Ms. Thomas' medical provider, Danielle N Callahan, APRN, cleared Ms. Thomas for full duty work as of May 1, 2025.

14. On May 2, 2025, Ms. Thomas attended the fitness for duty examination at TGH Urgent Care, HART's designated medical facility.

15. On May 9, 2025, Hasna Brown, the Client Services Clerk at TGH Urgent Care, emailed Ms. Thomas and stated that upon further review with the doctor, Ms. Thomas needed to come back to TGH for her physical in July 2025 because Ms. Thomas was to be at least three months postoperative before sitting for her physical.

16. On June 3, 2025, Ms. Thomas submitted a request for a reasonable accommodation to take additional time off work to properly heal and recover from her surgery. HART granted this accommodation and permitted Ms. Thomas to return to work on July 3, 2025.

17. On June 25, 2025, Ms. Shelton scheduled a fitness for duty examination, drug test, DOT physical, and fitness for duty urine screening for Ms. Thomas to take place at TGH Urgent Care on July 1, 2025, at 8:00 a.m. At the time she scheduled this urine screening, Ms. Shelton knew that Ms. Thomas was unable to produce urine.

18. That same day, Ms. Thomas informed Ms. Shelton that she was unable to produce urine because of her disability and advised Ms. Shelton that she required an alternative to the urine drug test as an accommodation to her disability.

19. On June 27, 2025, Ms. Thomas received a Doctor's Note from Theresa Laurente, APRN FNP-C, stating that she had End Stage Renal Disease and that she was unable to make urine.

20. On July 1, 2025, Ms. Thomas attended the fitness for duty examination at TGH Urgent Care, HART's designated medical facility. Ms. Thomas informed the medical provider that she was unable to produce a urine sample due to her disability and showed them her doctor's note from Dr. Laurente.

21. At that time, TGH Urgent Care contacted HART directly and advised that Ms. Thomas had a doctor's note indicating that she was unable to provide a urine sample. TGH Urgent Care further inquired whether HART would permit an alternative method of testing such as hair follicle testing or saliva testing.

22. HART advised TGH that a urine test was required and that a hair follicle test or saliva test would NOT be permitted.

23. As a result, TGH failed Ms. Thomas for fitness for duty solely because she was unable to provide a urine sample for the mandatory drug screening—a direct consequence of her disability.

24. On July 2, 2025, Ms. Thomas received a letter from Audrey Deines, Manager of Human Resources, stating that she was being placed on medical hold pending completion of a DOT physical, fitness for duty, and Drug/Alcohol and Urine test clearance by the close of business on July 16, 2025. The letter stated that if Ms. Thomas did not complete the DOT physical, fitness for duty, and Drug/Alcohol and Urine test clearance by the close of business on July 16, 2025, HART would terminate Ms. Thomas' employment.

25. The letter also falsely stated that Ms. Thomas had not provided documentation that would allow her to return to work as a Transit Operator. Ms. Thomas had provided HART with multiple documents from her team of medical professionals regarding her inability to produce urine due to her disability.

26. On July 11, 2025, Ms. Thomas received another Doctor's Note from Theresa Laurente, APRN FNP-C, stating that she "is anuric (cannot make urine) because she has end stage renal disease and is on dialysis." Dr. Laurent's note also states, "[m]y patient needs a saliva drug test."

27. On July 14, 2025, Ms. Shelton required Ms. Thomas to attend a second fitness for duty examination. Ms. Thomas attended that examination and was again unable to provide a urine sample due to her disability.

28. Ms. Thomas again presented the July 11th doctor's note from Dr. Laurente stating that she was unable to provide urine because of her anuric condition. However, the Nurse at TGH stated that HART required a urine drug test. Ms. Thomas again failed the fitness for duty examination because TGH had been informed by HART that a urine drug test was mandatory and Ms. Thomas was unable to provide urine for this test due to her disability. HART did not inform TGH at this time that a saliva or hair follicle drug test was permitted as an alternative to the urine drug test.

29. After Ms. Thomas failed the test due to her inability to complete the urine drug test, she requested reassignment to another position as a light-duty accommodation. HART denied her request for this accommodation.

30. On July 16, 2025, HART terminated Ms. Thomas from her position, citing her failure to pass the fitness for duty exam.

31. On or about July 25, 2025, Ms. Thomas received a COBRA Continuation Coverage Election letter confirming her termination date of July 16, 2025.

32. Notably, at Ms. Thomas' May 2, 2025 fitness for duty examination, TGH Urgent Care recognized that a urine sample could not be collected due to her anuric condition and administered a hair follicle drug screen as an alternative. That result was accepted by HART. Despite this established precedent, HART refused to authorize the same accommodation at the July 1 and July 14, 2025 examinations.

33. Ms. Thomas has incurred attorney's fees and costs by filing this claim.

## COUNT I
## VIOLATION OF THE ADA
## FOR FAILURE TO PROVIDE A REASONABLE ACCOMMODATION & ENGAGE IN THE INTERACTIVE PROCESS IN GOOD FAITH

34. Plaintiff, BELINDA THOMAS, incorporates by reference the allegations set forth in paragraphs one (1) through thirty-three (33) as if set forth herein in full.

35. The Americans with Disabilities Act, 42 U.S.C. §12101, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's disability or perceived disability.

36. The ADA requires employers to grant reasonable accommodations to the known mental or physical limitations of an otherwise qualified employee unless the employer can show the accommodation would impose an undue hardship on the operation of its business.

37. When an employee requests an accommodation, this triggers an interactive process to determine the appropriate accommodation in which the employee and employer must participate. 29 C.F.R. § 1630.2(o)(3).

38. An employer who fails to engage in the interactive process in good faith is liable for disability discrimination when there is a breakdown in communication that blocks or delays an accommodation.

39. During her employment with Defendant, Ms. Thomas suffered from End-Stage Renal Disease (ESRD) and Anuria, a permanent condition in which her kidneys no longer produced urine, and which required ongoing dialysis.

40. Plaintiff is a member of a protected class and protected by the ADA from discrimination based on her disability or perceived disability.

41. Defendant is an "employer" within the meaning of the ADA during the time of these allegations.

42. Plaintiff has satisfied all procedural and administrative requirements set forth in the ADA.

43. Ms. Thomas was qualified for her job and was able to perform all essential functions of her job with a reasonable accommodation.

44. Defendant failed to engage in the interactive process in good faith by not accommodating Ms. Thomas' disability or placing her in an alternative position as a reasonable accommodation, thus leading to Ms. Thomas' termination.

45. The discriminatory conduct described herein demonstrates Defendant's failure to provide Plaintiff with a reasonable accommodation and its refusal to engage in the interactive process with Plaintiff in good faith. Defendant's actions violated the ADA and are a form of discrimination against Plaintiff based on her disability.

46. Defendant's actions in refusing to provide her a reasonable accommodation were reckless, willful, and malicious.

47. Defendant's actions in refusing to engage in the interactive process in good faith were reckless, willful, and malicious.

48. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation,

embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff, BELINDA THOMAS, demands entry of a Final Judgment against Defendant for the following:

A. An award of Back Pay damages;

B. An award of Front Pay damages;

C. Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D. Prejudgment interest;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

## COUNT II
## VIOLATION OF THE ADA DISCRIMINATION RESULTING IN ADVERSE EMPLOYMENT ACTION ON THE BASIS OF DISABILITY

49. Plaintiff, BELINDA THOMAS, incorporates by reference the allegations set forth in paragraphs one (1) through thirty-three (33) as if set forth herein in full.

50. The Americans with Disabilities Act, 42 U.S.C. §12101, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's disability or perceived disability.

51. During her employment with Defendant, Ms. Thomas suffered from End-Stage Renal Disease (ESRD) and Anuria, a permanent condition in which her kidneys no longer produced urine, and which required ongoing dialysis.

52. Plaintiff is a member of a protected class and protected by the ADA from discrimination based on her disability or perceived disability.

53. Defendant is an "employer" within the meaning of the ADA during the time of these allegations.

54. Plaintiff has satisfied all procedural and administrative requirements set forth in the ADA.

55. Ms. Thomas was qualified for her job and was able to perform all essential functions of her job.

56. On July 16, 2025, Defendant terminated Ms. Thomas from her position because of her disability or perceived disability.

57. Defendant's conduct in terminating Ms. Thomas because of her disability was reckless, willful, and malicious.

58. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff, BELINDA THOMAS, demands entry of a Final Judgment against Defendant for the following:

A. An award of Back Pay damages;

B. An award of Front Pay damages;

C. Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D. Prejudgment interest;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

**COUNT III**
**VIOLATION OF THE ADA**
**RETALIATION FOR ENGAGEMENT IN PROTECTED ACTIVITY**
**RESULTING IN ADVERSE EMPLOYMENT ACTION**
**ON THE BASIS OF DISABILITY**

59. Plaintiff, BELINDA THOMAS, incorporates by reference the allegations set forth in paragraphs one (1) through thirty-three (33) as if set forth herein in full.

60. Plaintiff is a member of a protected class under the ADA.

61. Plaintiff engaged in protected activity under the ADA when she requested a reasonable accommodation permitting her to complete her fitness for duty examination by submitting to a hair follicle drug test in lieu of a urine drug test.

62. Plaintiff also engaged in protected activity when she requested to work a light duty position as a reasonable accommodation.

63. Defendant retaliated against Plaintiff for engaging in a protected activity under the ADA by choosing to terminate her after she requested reasonable accommodations due to her underlying disability.

64. Defendant's actions were reckless, willful and done with malice.

65. As a direct, proximate and foreseeable result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, loss of benefits, inconvenience, embarrassment, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are permanent and continuing.

**WHEREFORE**, Plaintiff, BELINDA THOMAS, demands entry of a Final Judgment against Defendant for the following:

A. An award of Back Pay damages;

B. An award of Front Pay damages;

C. Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D. Prejudgment interest;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

## COUNT IV
## VIOLATION OF THE FCRA
## FOR FAILURE TO PROVIDE A REASONABLE ACCOMMODATION & ENGAGE IN THE INTERACTIVE PROCESS IN GOOD FAITH

66. Plaintiff, BELINDA THOMAS, incorporates by reference the allegations set forth in paragraphs one (1) through thirty-three (33) as if set forth herein in full.

67. The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, et seq. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's disability.

68. The FCRA closely mirrors the language of the ADA with respect to unlawful discrimination based on a person's disability.

69. Employers are required to grant reasonable accommodations to the known mental or physical limitations of an otherwise qualified employee unless the employer can show the accommodation would impose an undue hardship on the operation of its business.

70. When an employee requests an accommodation, this triggers an interactive process to determine the appropriate accommodation in which the employee and employer must participate.

71. An employer who fails to engage in the interactive process in good faith is liable for disability discrimination when there is a breakdown in communication that blocks or delays an accommodation.

72. During her employment with Defendant, Ms. Thomas suffered from End-Stage Renal Disease (ESRD) and Anuria, a permanent condition in which her kidneys no longer produced urine, and which required ongoing dialysis.

73. Plaintiff is a member of a protected class and protected by the FCRA from discrimination based on her disability or perceived disability.

74. Defendant is an "employer" within the meaning of the FCRA during the time of these allegations.

75. Plaintiff has satisfied all procedural and administrative requirements set forth in the FCRA.

76. Ms. Thomas was qualified for her job and was able to perform all essential functions of her job with a reasonable accommodation.

77. Defendant failed to engage in the interactive process in good faith by not accommodating Ms. Thomas' disability or placing her in an alternative position as a reasonable accommodation, thus leading to Ms. Thomas' termination.

78. The discriminatory conduct described herein demonstrates Defendant's failure to provide Plaintiff with a reasonable accommodation and its refusal to engage in the interactive process with Plaintiff in good faith. Defendant's actions violated the FCRA and are a form of discrimination against Plaintiff based on her disability.

79. Defendant's actions in refusing to provide her a reasonable accommodation were reckless, willful, and malicious.

80. Defendant's actions in refusing to engage in the interactive process in good faith were reckless, willful, and malicious.

81. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff, BELINDA THOMAS, demands entry of a Final Judgment against Defendant for the following:

A. An award of Back Pay damages;

B. An award of Front Pay damages;

C. Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D. Prejudgment interest;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

**COUNT V**
**VIOLATION OF THE FCRA**
**DISCRIMINATION RESULTING IN**
**ADVERSE EMPLOYMENT ACTION**
**ON THE BASIS OF DISABILITY**

82. Plaintiff, BELINDA THOMAS, incorporates by reference the allegations set forth in paragraphs one (1) through thirty-three (33) as if set forth herein in full.

83. The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, et seq. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's disability.

84. During her employment with Defendant, Ms. Thomas suffered from End-Stage Renal Disease (ESRD) and Anuria, a permanent condition in which her kidneys no longer produced urine, and which required ongoing dialysis.

85. Plaintiff is a member of a protected class and protected by the FCRA from discrimination based on her disability or perceived disability.

86. Defendant is an "employer" within the meaning of the FCRA during the time of these allegations.

87. Plaintiff has satisfied all procedural and administrative requirements set forth in the FCRA.

88. Ms. Thomas was qualified for her job and was able to perform all essential functions of her job.

89. On July 16, 2025, Defendant terminated Plaintiff from her position because of her disability or perceived disability.

90. Defendant's conduct in terminating Plaintiff because of her disability was reckless, willful, and malicious.

91. As a direct and proximate result of Defendant's actions, Plaintiff has suffered a loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, embarrassment, and damage to her professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff, BELINDA THOMAS, demands entry of a Final Judgment against Defendant for the following:

A. An award of Back Pay damages;

B. An award of Front Pay damages;

C. Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D. Prejudgment interest;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

**COUNT VI**
**VIOLATION OF THE FCRA**
**RETALIATION FOR ENGAGEMENT IN A PROTECTED ACTIVITY RESULTING IN ADVERSE EMPLOYMENT ACTION ON THE BASIS OF DISABILITY**

92. Plaintiff, BELINDA THOMAS, incorporates by reference the allegations set forth in paragraphs one (1) through thirty-three (33) as if set forth herein in full.

93. Plaintiff is a member of a protected class under the FCRA.

94. Plaintiff engaged in protected activity under the FCRA when she requested a reasonable accommodation permitting her to complete her fitness for duty examination by submitting to a hair follicle drug test in lieu of a urine drug test.

95. Plaintiff also engaged in protected activity when she requested to work a light duty position as a reasonable accommodation.

96. Defendant retaliated against Plaintiff for engaging in a protected activity under the FCRA by choosing to terminate her after she requested reasonable accommodations due to her underlying disability.

97. Defendant's actions were reckless, willful and done with malice.

98. As a direct, proximate and foreseeable result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, loss of benefits, inconvenience, embarrassment, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with

lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are permanent and continuing.

**WHEREFORE**, Plaintiff, BELINDA THOMAS, demands entry of a Final Judgment against Defendant for the following:

A. An award of Back Pay damages;

B. An award of Front Pay damages;

C. Compensatory Damages for mental anguish, loss of enjoyment of life, and humiliation;

D. Prejudgment interest;

E. Reasonable attorney's fees and costs; and

F. All such other relief as the Court deems just, equitable and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Dated this 21st day of October, 2026.

Respectfully submitted by:

*/s/ Gary L. Printy, Jr., Esq.*
Gary L. Printy, Jr., Esq.
Florida Bar No. 41956
**THE PRINTY LAW FIRM**
5407 N Florida Ave
Tampa, Florida 33604
Telephone (813) 434-0649
Fax (813) 423-6543
garyjr@printylawfirm.com
e-service@printylawfirm.com
*Lead Counsel for Plaintiff*